May it please the Court, I'm Holly Horrell, representing Turtle Island Restoration Network, or TURN. And I'd like to reserve two minutes of my time for rebuttal, if possible. Very well. TURN is here today to appeal the lower court's dismissal of its claims on res judicata grounds. This court should allow TURN to pursue its claims because they arise from different transactions than Earth Island's prior claims and because the merits of these claims have never been heard in a court of law. But the question is not whether they've been heard. The question is whether they could have been heard. I mean, nobody disputes that the claims weren't raised. But if the claims could have been raised and involved the same transaction, then they would be barred, right? And why are these claims that could have been raised 93, 96, 99? You know, any time along the way. To answer your first point, Your Honor, the court's only use could have language where plaintiffs are challenging the same transaction repeatedly and alleging oftentimes the same causes of action. The test in the circuit for identity of claims focuses on whether. I'm sorry. You're not answering the question I asked. You're answering a different question. And we can talk about that question after you answer my question. Okay. So the question I ask is why couldn't have these claims been raised? And if the answer is yes, they could have been, but it doesn't matter, then fine. We can go on to that question. But I would like to have an answer to my question. Let me put it in a positive way rather than a negative way. Could these claims have been raised in, let's say, Earth Island 3? Because that case was only. It's no longer a why. It's a no. Why could not? Couldn't. Why not? They could have challenged, I guess, yes and no. They could have challenged certification. It's not a helpful answer. And I don't mean to limit you. This is part U.S. part. No, that's fine. But I really need to understand. I mean, let me just make it perfectly clear. And this answer could apply to Earth Island 2 or Earth Island 1. I don't know. But let's focus on Earth Island 3 because that's the last case, which was brought in 1999. By that time, the State Department had made the determinations as going back to 1993, right? So there was a track record of yearly determinations, right? Is there any – could Earth Island 3 have included a challenge of one of those determinations, the 1993, 94, 95, 96 determinations? Earth Island could have challenged a prior certification decision, yes. But because its claims challenged only provisions in the guidelines and because issuing guidelines or promulgating regulations is a different government action and is a different transaction than making a certification decision, the test in this Court is not whether they could have been brought at the same time. So if I understand your question correctly, it is yes, they could have, but in your view, it doesn't matter. Yes. Okay. And let me understand why you think it doesn't matter. The term, Earth Island term, I mean the same entity, right? You're not disputing the same entity, right? It's not really harmed by the regulations, right? The regulations themselves don't cause any harm. The harm ultimately is the determinations that are made under the statute and the regulations. Isn't that right? So why isn't a, you know, in order to sort of establish standing to raise regulation, wasn't it implicitly a challenge to the actual determinations? Why isn't that at the heart of all three of the Earth Island cases? What is really challenging is not pieces of paper, you know, issued by the, you know, in the Federal Register. What's really challenging is the fact that the State Department is allowing this shrimp to be imported to the United States. Yes, Your Honor. So why isn't that part of the same transaction? Because in a challenge to the guidelines, to provisions in the guidelines, there was no provision addressing whether the National Environmental Policy Act and Section 7 of the Endangered Species Act applied to certification decisions. And in the absence of a provision, term could not have in a challenge strictly to the text of the guidelines brought a claim alleging on NEPA or ESA grounds that the Department was going to violate NEPA and ESA in the future when it made certification decisions implementing those implementing regulations. But counsel, I'd like to refer you to your own complaint, paragraphs 27 and 28, where you allege that the Department has never prepared these certifications in compliance with the environmental law or the consultation law under 609. So if they never did it, isn't the answer to Judge Kuczynski's question yes, we could have brought it because they've never done it since they started doing this in 1993? Yes. But again, the difference is that it is a different transaction and that in a challenge to the guidelines, which is what both Earth Island cases were about, it was challenges to provisions in the guidelines that were inconsistent or at least questionably consistent with Section 609. And in a challenge to those provisions, there was no provision that Earth Island could have challenged about NEPA or the ESA. So the question is why can a litigant choose to slice a transaction that way and say we only choose to challenge the guidelines? Isn't the whole idea of estoppel that you are required to bring your full claim at the time you bring your claim? If you don't, you are stopped because you didn't. So if you already said you could have. No, because the law of res judicata is that a plaintiff in challenging one transaction must bring all the different legal theories arising from that transaction. This is not a different theory because making a certification decision, only that, not the issuance of guidelines, only the certification decision is a federal agency decision that may be challenged under the Administrative Procedure Act. So because the Earth Island cases only concerned challenges to the guidelines that the Department was revising every couple of years in the 1990s, putting out new interpretations of Section 609 and what it allowed the Department to consider or what the Department felt it was not required to consider. Earth Island was challenging those articulated provisions that were in front of it. And in the absence of a provision affirmatively stating whether NEPA and the ESA apply and a challenge to the guidelines, there was no claim on NEPA and ESA grounds. The Department knows how to say when it thinks other substantive laws don't apply to it. In its guidelines, in the 1999 guidelines, for example, under related considerations, they state that the Administrative Procedure Act, the Regulatory Flexibility Act, and then Executive Order do not apply to their guidelines. And in earlier versions of the guidelines, 1991 and 93, for example, they specifically stated that these guidelines do not contain any provisions that would trigger their duties under the Paperwork Reduction Act. When, in the mid-1990s, the Department began requiring exporters and importers to submit a declaration with their shipments, that requirement, when put into the 1996 guidelines, did trigger their duties under the Paperwork Reduction Act and they accordingly removed the disclaimer. So without ever articulating before, it's an interpretation of whether NEPA and ESA apply to its certification decisions. In a challenge to the guidelines, Earth Island had no claim. No matter how many times the Department violated NEPA and ESA in its certification decisions, that did not make a claim challenging the guidelines any more colorable. Publishing guidelines is not a final agency action when there is no statement about their policy towards NEPA and ESA. But you're saying this is premature. This would have been premature in the other cases. But again, I go back to your complaint that alleges they never did it. So how could it be premature if they had never done it? I'm sorry. Can you rephrase it? How could this claim you're bringing now have been premature in the earlier cases when you are alleging in this case that the agency never did this, even at the time of the earlier cases? We agree that Earth Island or TURN could have challenged earlier certification decisions on NEPA and ESA.  Well, I'm just trying to reconcile your own allegations in this case with what you just said and your position in this case on appeal that it would have been premature. I don't see how it would have been premature at all. If you had challenged what they were doing back in the 90s, wouldn't it have been a right challenge at that point? Yes, Your Honor, if we had challenged the certification decision, but not if we had challenged You're saying you didn't have to challenge the certification. As I understand your argument, you're saying you were not required to do this, and res judicata only applies to claims that you would have been required to join in the original suit. That's correct, Your Honor. Okay. And you're just saying that these are two different things, the certifications and the guidelines and regulations are just two totally different things, and you could sit back and choose and do this ad infinitum or what? No, Your Honor. We are saying there are two different transactions, but the question of res judicata also looks at other factors, such as whether there are different causes of actions being alleged. The reason that matters in this case is because, as I said, in a challenge to the guidelines, there is no NEPA or ESA claim. Go ahead. Go ahead. I believe both of you are speaking. What I'm wondering, we're losing sight of, and maybe this is not so, were you concerned about a certain harm, and is the harm you were concerned about then the same harm you're concerned about now? No, Your Honor. There are different harms, as you point out. What are they? What's the difference? Yeah, what are the different harms? The harms from the inconsistent provisions in the 1990 guidelines were that the Department was not properly enforcing Section 609's mandate, which allowed shrimp into this country that adversely affected sea turtles. But, no, you challenged the regulations. I mean, the harm was not the regulations. The harm was the letting in of the shrimp. Right? I mean, the same harm you're challenging now. I mean, the only thing anybody cares about is do we let the shrimp in or do we not let the shrimp in. That's really all that matters. No, Your Honor. I'm sorry. What are you? I'm sorry. I was that. I was sort of turning off because I'm not, no, I'm not sort of understanding. Sure. And I think that's what Ms. Shares was asking. So the harm in this case by not complying with NEPA and the ESA when the Department makes certification decisions. What difference does that make unless there's some evil? And what is the evil? And the evil is we're letting the shrimp be sold. Isn't that the same always? And today, if you would not prevail, you could come tomorrow and say, oh, yes, we would. But does it still be the same harm? Do you understand what I mean when I say harm? I understand what you mean. But the harm here that we are challenging, and as evidenced by the relief that we seek, is that there are informational and process harms in not complying with the National Environmental Policy Act and Section 7 of the Endangered Species Act. Congress has mandated that the formal consultation procedures under the ESA and NEPA analysis are the best way to ensure that a department, an agency, is looking at the environmental effects of its decisions and they are the best way to assure the public. How did Earth Island have standing to challenge the regulations? I believe they have standing because they have informational, they derive informational and scientific and aesthetic interest from sea turtles. Sea turtles, right? It is a harm to sea turtles. That was the harm from the regulations, and that's the harm from the certifications. Ultimately, it gets down, their harm is the effect of all these legal actions on the survival of sea turtles. Right? So... We don't deny that that is in the background of this case. Well, it's not in the background. It's the background of litigation. Without that, you don't have standing. There wouldn't have been standing. There would have been no reason. I mean, somebody just can't come on the street and say, we're going to challenge State Department regulations because we don't like them. You have to show standing, and the standing involves, we have an interest in how much shrimp is imported because the shrimp, not how much, but from which country the shrimp is imported, because these countries are allowing shrimp to be harvested in a way that damages sea turtles. The reason we have interest, a concrete interest in litigation. There's the same interest that you had in Earth Island 1, and Earth Island 2, and Earth Island 3, and in this case. Right? There's nothing else. There's nothing else except turtles, right? Turtles all the way down. Turtles are constantly in these suits. That's true. But there is also, and I believe these are serious harms. It's informational and process harms. The only relief turn seeks appropriately is to ensure that the Department gets started in those processes. I'm sorry. My time is up. Your time is up. We'll give you a little time for rebuttal. Okay. We'll hear from the government. I believe it's Mr. Shulton.  Again, the microphone here. Thank you, Your Honor. Should I arrange our counselors better to have them in ascending order of heights, you know? And may it please the Court, I am David Shulton representing the Department of State. And it is our position that these claims are barred by res judicata because they arise from the same set, basic set of facts that has existed all along here, which is that the State Department does not apply the procedures. Let me cut to what I think is the heart of the matter. And that is the question. They bring a challenge to the regulations. Okay. And the question is, is a challenge to the regulation the same or rather the same operative set of facts as a challenge to certification under the regulations? It does, Your Honor, because what I must tell you, it strikes me as sort of different. There are actually guidelines. But what the guidelines do is they tell the agency how to implement the statute and how to carry out the certifications. So the guidelines are simply where the agency sets out for the world what it's going to do, what it's going to consider. But what really has a real world impact is the annual certifications. That is what allows the shrimp to come in and what ultimately concerns the plaintiff, because they feel that the State Department is not being strict enough in allowing the shrimp to come in. So it is the annual certifications, I think, that are the. No, but that's not what the first case said. The first case, the 1995 case, was a facial attack on the guidelines for not having gone through the proper notice and public comment period. And the second case was on the revised guidelines that came out of that first case and was attacking the guidelines on their face for allowing individual vessels to certify rather than the countries themselves. How is that the same claim at all as annual certifications that ignore the environmental impact statement requirement and the consultation requirement? Well, the first case, actually, which we call Group I and II, had two claims to it. And one of them did focus on the certifications. That claim was that the certifications were faulty because they were not looking at the actual compatibility of take, the incidence of take in foreign countries, but instead were basically saying that if the foreign countries used turtle excluder devices, that's good enough. So part of the case did focus on that. It had nothing to do with the environmental impact statement. It had nothing to do with consultation with the fisheries service, right? No, that theory was not raised, but it should have been raised because it was clear at the time that the agency was not applying NEPA or Section 72 of the Endangered Species Act procedures. Why do you say that it was so clear when the guideline itself, and you both cite to this guideline provision in the Federal Register at page 36,950, which says a department in consultation with the National Marine Fishery Service will also take into consideration information, et cetera. In other words, your own guidelines seem to say you're going to comply, and now they're saying you don't comply. So how could you have it both ways? That's consultation pursuant to Section 609B. Consultation under Section 7A2 of the Endangered Species Act, however, is a very specific type of procedure, which has regulations that would have required preparation of a biological evaluation, and then if there was an adverse effect found, there would have had to be a biological opinion done by National Marine Fishery Service. So it was not the sort of consultation that you would do under Section 7A2 of the Endangered Species Act. It's simply that NIMFS is the expert agency with regard to sea turtles, so of course State Department is going to talk to NIMFS about the situation in foreign nations and how sea turtles are being affected, but that's not Section 7A2 consultation. And these plaintiffs are sophisticated environmental groups, and they would know, certainly, if there is Section 7A2 consultation going on, and if there were any question they could ask, they could write a notice letter. If you want to sue under the Endangered Species Act, you have to send a notice letter, as they did in this present case, and that would elicit a response from the agency. So it would not have been difficult at all to tell that the agency did not think that these statutes applied. I agree, but you have to say that they were required to do all those things in connection with those earlier suits in order to preclude them now under res judicata. And if it arises from the same transactional nucleus effect, they must, and it does, because all of these cases basically arise from the State Department's implementation of this one narrow statute that has a prohibition and an exception. And so all of the cases are about whether the State Department has defined that prohibition appropriately and applied the certification appropriately. And that sets the nucleus effect, and whether or not the State Department considers whether it's a major federal action with a significant impact on the environment, which would be the NEPA test, or whether there's a likelihood of jeopardy under the Endangered Species Act, that should be part and parcel of that whole transactional nucleus effect. If the plaintiffs believe that those two matters should have been considered, that should have been brought, because those fit right into the sorts of considerations the State Department was looking at in those earlier years. But the State Department was simply looking at the factors that Congress had set out in Section 609B itself. That is, is the four nations regulatory scheme comparable to the American scheme? It did not go beyond that. And so it should have been clear that the State Department was not applying the BORESA, and those claims could have been brought. So they're simply different theories relating to the same transactional nucleus effect. Let me ask you a somewhat different line of questions, or a different question. Let's say you were to prevail in this case, were to affirm. I'm not saying we were, but let's say we were to do so. Is there anything barring another environmental group from bringing the NEPA and ESA challenge? If the other group is not in privity and if it has standing, it could bring the challenge. That's true. No, I'm just saying there's nothing that would bar them by the fact that certification has been going on for years. Each year certification is a different agency action that could be challenged. That's correct. They could bring that challenge to the certification. They could say, what about NEPA? I'm just trying to understand. If a challenge is brought in one year and certifications are done on a yearly basis, in my experience these things take longer than a year to renegade to fruition. How does that work? Well, this issue, the NEPA ESA issue, is the same every year because it's the same thing. The agency is not applying these procedures, and they ought to, and that doesn't change from year to year. So there's no problem with mootness, in other words, because each year the agency does its certifications without doing NEPA or ESA. But the certifications are only good for one year, and we'd have to apply Roe versus Wade or something. Capable of repetition. Actually, more than capable, actually. It does, in fact, repeat every year. Right, right. Yes. So just for our purposes, not necessarily managers, so this issue would not, really one way or another in this case, would not preclude the issue from being litigated by some other group that's not in parity. And the fact that the certifications are yearly wouldn't preclude it, because under Roe or one of those cases it would be capable of determination. That's correct. So why fight it in this case? You know somebody's going to challenge it one of these years, right? Well, it's, you know, I think the race judicata point is an important one in this in this context. Ultimately, it doesn't matter. There must be some other group out there who's going to come after you. That could well be. And we have some good defenses, we feel. But this case, really, all we need to decide is the race judicata issue. And I think, you know, this is an unusual case. In all of our environmental cases, usually groups bring all their claims at once. The violation of a substantive statute, you've got the NEPA count, you've got the endangered species count, the National Historic Preservation count, and so forth, and it's all brought as a group in one case, and we think that's the way it should be done. And that these plaintiffs have said in their reply brief at page three that they elected not to bring these two claims in their earlier cases, because they thought they might be able to work with the agency. But there's no exception to race judicata for that sort of thing. And you really can't elect to not bring a claim that's available to you, because you'll be barred by race judicata. And I think it's just that the principles and the purposes of race judicata to avoid unnecessary burdens on defendants and the courts are furthered by ruling here that these claims should have been brought in the earlier litigation. And, really, there was nothing stopping these from being brought. It's not necessary. I just wonder how much burden is saved, you know, having one big, huge case with lots of issues, and a couple of smaller cases with more discreet issues, depending on which judge you are. You know, if you're the judge that has the first case, you would just soon have two smaller cases. Perhaps. But I mean, as far as the defendant is concerned, it doesn't matter. Right. If you're going to give this challenge. Does it really matter when we get challenged all at once or when we challenge it in separate? Well, we do think it's more efficient to have them all challenged at once. But if plaintiffs were correct, then there would be nothing from keeping them from, you know, just bringing their NEPA claim in this suit and then waiting to see how that goes. Bringing their endangered species claim in the next. And surely that that can't be the law. So I think that. Do you disagree with the restatement as the plaintiff set out in their reply brief? I'm going to just quote it to you. There's no compulsion on a plaintiff who has a number of claims against the defendant to join them in a single action. He may join them if he wishes, but he's not obliged to do so out of fear that he'll lose any claims he omits to join. Joinder of multiple claims is permissive and not compulsory. Do you disagree with that? I don't disagree as a statement of joinder law, but I think race judicata is. You know, this is in connection with race judicata. We have a restatement of race judicata. So they are not compelled to join claims that they may have, but that don't relate to the same nucleus of fact. So I think that's the that's the operative condition on that. If the claims do arise from the same nucleus of fact, they do have to bring them. If race judicata is to mean anything at all. But if, for instance, they had a court claim against the government or the State Department, they wouldn't have to join that because it doesn't arise from the same nucleus of fact. But these claims did. And that's that's basically our position here. Unless there are questions. Thank you. Thank you. Well, opposing counsel has two minutes and 15 seconds left. So I'll give it to you because I know you, Mr. Schultz, is generous and will cede his time to opposing counsel. Yes, he nods graciously. So it will be two minutes and 15 seconds. No matter what it says on the clock. Thank you, Your Honor. The guidelines are just that. They are guidelines that provide guidance on what types of information the department will consider and a timetable on which they will get back to nations. They do not in any way articulate how the department will make its certification decisions. And they do not. Well, you certainly knew that by the time you brought up Earth, Land, and Street because you had several years of experience of having them do certifications. So there's any doubt when Earth, Land, and Street was brought up, there was no doubt that these guidelines were going to be provided in a way that, I mean, maybe on their face they don't make it clear, but by the time a third case comes along, it's quite clear that these guidelines do not call for or do not and that the agency will not involve in this process. Yes, Your Honor. But because they arise from different transactions, it's a certification decision. We were not required to bring that claim. And because we elected instead to work with the State Department and work in Costa Rica to enforce Section 609 on the ground, does not somehow waive our right to challenge that certification decision in 2009. If the department had articulated its position on EPA and the ESA in any version of its guidelines, you can bet we would have sued just like we challenged in our initial suit their articulation that the EPA did not apply to its publication of the guidelines. But they didn't. And under Hell's Canyon and under the restatement, as Judge Fettelman cited, claims challenging different transactions do not have to be brought at the same time and are not barred by res judicata. Do you agree with your opponent that it would have been improper or at least you would have exposed yourself to a res judicata argument if you only went under NEPA this time and then waited for that ruling and then filed the next suit under the ESA? Maybe I'm putting that a little awkwardly. I think I get your point. I think it probably would be barred by res judicata in that case. Because? Just because. Because they are, those two laws do tend to apply to the same decisions and have similar legal questions of whether or not those decisions trigger NEPA and Section 7 of the ESA. I gather you said it makes no difference if the harm you're concerned with is the same, even though you bring a different cause of action. The harms, I apologize, I didn't articulate it better before, but the harms in the earlier cases. No, I understand your point, but you're concerned with turtles. Yes. And you're concerned that if shrimp can be sold by countries that aren't concerned with turtles, there's a problem. And so you challenge the regulation and you challenge. Do you see what I'm asking you? I see what you're asking. We are concerned with turtles, but in this case, we are primarily concerned with the only claims we allege and the only relief we seek addresses the harm that is informational and processed from when the Department of Health. And does the restatement apply in this case in your view? Yes, Your Honor. Because we could not, and challenges to provisions articulated in the guidelines have brought a NEPA or ESA claim. For these reasons, we respectfully request that the Court overrule the decision below and allow turn to pursue its claims. Thank you. Our case is now yours and submitted. We thank counsel for a very fine argument on both sides.
judges: Gettleman, Kozinski, Farris